UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| KIMBERLY DAWN TIMS | CIVIL ACTION |
|---|---|
| VERSUS | NO. 16-70-EWD |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY | CONSENT CASE |

# RULING and ORDER[1]

Plaintiff Kimberly Dawn Tims ("Plaintiff"), a *pro se* litigant, brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of Carolyn W. Colvin, acting Commissioner of Social Security (the "Commissioner"), denying her application for Title XVI supplemental security income. The parties here consented to proceed before a United States Magistrate Judge[2] and the case was transferred to this Court for all further proceedings and entry of judgment pursuant to 28 U.S.C. § 636(c).[3] For the reasons assigned below, the decision of the Commissioner is **AFFIRMED** and Plaintiff's appeal is **DISMISSED WITH PREJUDICE**.

## I. Procedural Background

On May 16, 2014, Plaintiff protectively filed a Title XVI application for supplemental security income, alleging disability beginning August 15, 2012 due to depression, anxiety, nervous breakdowns, attention deficit disorder ("ADD"), attention deficit hyperactivity disorder ("ADHD"), and seizures.[4] The claim was initially denied on September 12, 2014[5] and Plaintiff

---

[1] References to documents filed in this case are designated by "R. Doc. at [page numbers]." References to the record of administrative proceedings filed in this case are designated by "AR [page numbers]."
[2] R. Doc. 14.
[3] R. Doc. 16.
[4] AR pp. 110-18; *See*, AR pp. 53, 67.
[5] AR pp. 52-63; 67-70.

1

filed a request for a hearing on November 5, 2014.[6]  A video hearing was held on August 7, 2015, at which Plaintiff, represented by counsel, appeared and testified.[7]  A vocational expert, Thomas Mounier, also appeared and testified.[8]  An unfavorable decision was rendered by the ALJ on September 25, 2015.[9]  On October 22, 2015, Plaintiff appealed the ALJ's decision.[10]  On December 8, 2015, the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") denied Plaintiff's request for review of the ALJ's decision.[11]

On February 2, 2016, Plaintiff, proceeding as a *pro se* litigant, timely filed a Complaint in this Court.[12]  Accordingly, Plaintiff exhausted her administrative remedies with regard to her application before seeking judicial review and the ALJ's decision is the Commissioner's final decision for purposes of judicial review.  *See,* 20 C.F.R. § 404.981.[13]

---

[6] AR p. 71.
[7] AR pp. 31-52.
[8] AR pp. 49-51.
[9] AR pp. 15-29.
[10] AR p. 14.
[11] AR pp. 1-6.
[12] R. Doc. 1.
[13] The undersigned notes that in the Complaint, Plaintiff alleges the following:

> I have a medical condition with my gall bladder being enlarged.  It causes severe abdominal pain.  Dr. Ravula my general practioner [sic] along with surgeon Dr. James Williams can't find the cause of it.  The gall bladder being enlarged causes not only severe constant pain but also, it causes me difficulty in sitting, standing and sleeping on my left side.  I've been prescribed pain medication.

R. Doc. 1 at 4-5.  Attached to the Complaint are medical records from Dr. Shantan Ravula, M.D., and Dr. James Williams, M.D., showing that Plaintiff was treated on September 15, 2015, October 15, 2015, December 3, 2015 and December 23, 2015 for complaints of abdominal pain and that Plaintiff was diagnosed with an enlarged gallbladder on December 3, 2015.  R. Doc. 1-1 at 4-32.  In the Memorandum filed in support of her appeal to this Court, Plaintiff also refers to her "claims of depression, ADD, ADHD, anxiety, and my gall-bladder."  R. Doc. 11 at 1.  However, this action appears to be the first time that Plaintiff has ever asserted that her disability may be due, at least in part, to an enlarged gallbladder.  As previously discussed, the administrative record shows that Plaintiff filed an application for supplemental security income on May 16, 2014 alleging disability beginning August 15, 2012 due to depression, anxiety, nervous breakdowns, ADD, ADHD and seizures.  *See, supra,* n.4.  There is nothing in the administrative record to indicate that Plaintiff ever alleged that she is disabled due to a gallbladder condition prior to filing her Complaint.  Further, the administrative record shows that in denying review of the ALJ's September 25, 2015 decision, the Appeals Council specifically considered the arguments raised by Plaintiff's counsel in a letter dated October 22, 2015.  AR pp. 2, 4, 5, 180, 181.  In that letter, Plaintiff's counsel asserts that, "The reason for this appeal are the manner in which the court handled the treating medical source opinion, the consultative examiner's opinion, the state agency medical opinion, and the credibility assessment of the claimant."  AR p. 180.  The October 22, 2015 letter makes no mention of Plaintiff's alleged abdominal pain related to her gallbladder, nor does Plaintiff's counsel allege

2

## II. Standard of Review

This Court's review of the Commissioner's decision denying disability benefits is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001). If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).

If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *Richardson*, 402 U.S. at 390, 91 S.Ct. at 1422; *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bradley*, 809 F.2d at 1057 (quoting *Deters v. Secretary of Health, Educ. & Welfare*, 789 F.2d 1181, 1185 (5th Cir. 1986)). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). Conflicts in the

---

any error on the ALJ's part for failing to consider any such allegations, even though Plaintiff had already been treated by Dr. Ravula for abdominal pain on two occasions. Thus, to the extent Plaintiff is alleging any error on the part of the ALJ for failing to consider her gallbladder condition in the ALJ's September 25, 2015 decision, Plaintiff has not shown that she has exhausted her administrative remedies with respect to any such alleged error. *See, McQueen v. Apfel*, 168 F.3d 152, 155 (5th Cir. 1999) ("A claimant fails to exhaust his administrative remedies if does [sic] not raise a claim of error to the Appeals Council before filing suit on that basis."). Although the Fifth Circuit has recognized that, "[A] court may review the [Commissioner's] decision if the claim of error is 'an expansion of the general rationale proffered in support of the appeal' to the Appeals Council," such is not the case here, as the rationale proffered in support of Plaintiff's appeal to the Appeals Council bears no connection to Plaintiff's gallbladder condition. *McQueen*, 168 F.3d at 155. As such, to the extent Plaintiff is alleging any error on the part of the ALJ for failing to consider her gallbladder condition, the Court lacks subject matter jurisdiction over any such claim. *See, Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) ("This court has jurisdiction to review the [Commissioner]'s final decision only where a claimant has exhausted [his] administrative remedies."); *See*, 20 C.F.R. § 404.900(b).

evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). In applying the substantial evidence standard the court must review the entire record as a whole, but may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). However, the substantial evidence test requires more than a search of the record for evidence supporting the ALJ's findings and must take into account whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision. *Burkhardt v. Comm'r of Soc. Sec. Admin.*, CIV. A. No. 3:08-CV-02032-B (BH), 2009 WL 3849617, at *8 (N.D. Tex. Nov. 16, 2009) (quoting *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984)).

**III. The ALJ's Disability Determination**

A social security disability claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505, 416.905. In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See,* 20 C.F.R. § 404.1520(a)(4). Using the five-step evaluation process, the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and

(5) the impairment(s) prevents the claimant from doing any other work. *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).

The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five. At step five, the Commissioner must prove, considering the claimant's residual functional capacity, age, education, and past work experience, that he or she is capable of performing other work. 20 C.F.R. § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

Here, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act from May 16, 2014, the date the application was filed,[14] through September 25, 2015, the date of the ALJ's decision.[15] At step one of the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 16, 2014, the application date.[16] At the second step, the ALJ found that Plaintiff had the following severe impairments: affective disorder, anxiety and ADD.[17] At step three of the analysis, however, the ALJ found that Plaintiff's impairments did not meet or medically equal the required criteria for any listed impairment.[18] The ALJ noted that

---

[14] The Fifth Circuit has held that, "[T]he relevant date for determining whether a claimant is disabled, and thus eligible to receive SSI benefits, is the filing date of his application." *Stringer v. Astrue*, 465 Fed. App'x 361, 365 (5th Cir. 2012) (unpublished) (*citing* Social Security Ruling 83–20, 1983 WL 31249, at *7 (explaining that for successful SSI benefits claimants, "[o]nset will be established as of the date of filing provided the individual was disabled on that date")). *See also*, 20 C.F.R. § 416.335 ("When you file an application in the month that you meet all the other requirements for eligibility, the earliest month for which we can pay you benefits is the month following the month you filed the application. If you file an application after the month you first meet all the other requirements for eligibility, we cannot pay you for the month in which your application is filed or any months before that month.").
[15] AR p. 18. The ALJ noted that, "Although supplemental security income is not payable prior to the month following the month in which the application was filed (20 CFR 416.335), the undersigned has considered the complete medical history consistent with 20 CFR 416.912(d)." *Id.*
[16] AR p. 20.
[17] AR p. 20.
[18] AR pp. 20-21.

5

the severity of Plaintiff's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06.[19] In reaching this conclusion, the ALJ considered whether Plaintiff satisfied the "paragraph B" or "paragraph C" criteria, but concluded that she did not.[20]

The ALJ then found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the nonexertional limitations of being limited to understanding, remembering and carrying out simple and routine tasks and to low stress jobs, defined as requiring only occasional decision-making and occasional changes in work setting.[21] The ALJ further found that, "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."[22] At step four of the analysis, the ALJ found that Plaintiff has no past relevant work, as that term is defined in 20 C.F.R. § 416.965.[23] Proceeding to the fifth step of the analysis, the ALJ found that based on the testimony of a vocational expert, as well as Plaintiff's age, education, work experience and RFC, Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.[24] The vocational expert testified that someone with Plaintiff's age, education, work experience and RFC would be able to work as a janitor, maid and dishwasher, and that each occupation has a large number of jobs available in both the local and national economy.[25] As such, the ALJ concluded

---

[19] At the time of the ALJ's decision, Listing 12.04 concerned affective disorders and Listing 12.06 concerned anxiety-related disorders. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (eff. Aug. 12, 2015 to May 23, 2016).
[20] AR p. 21.
[21] AR p. 22.
[22] AR p. 23.
[23] AR p. 24.
[24] AR pp. 25-26.
[25] AR p. 25; *See*, AR pp. 49-50.

that Plaintiff was not disabled from May 16, 2014, the date the application was filed, through September 25, 2015, the date of the ALJ's decision.[26]

## IV. Plaintiff's Allegations of Error

Although not a model of clarity, Plaintiff appears to allege that the ALJ's decision is not supported by substantial evidence and that the ALJ committed reversible error by failing to give controlling weight to the opinion of her treating physician, Dr. Kongara.[27] The Commissioner maintains that proper weight was given to the medical opinion evidence and that the decision to deny Plaintiff benefits is supported by substantial evidence and should be affirmed.[28]

## V. Analysis

### A. Substantial Evidence Supports the Weight Given to Dr. Kongara's September 4, 2015 Medical Source Statement

In her Memorandum filed in support of this appeal, Plaintiff asserts that the ALJ erred by failing to give controlling weight to the opinions of her treating physician, Dr. Kongara, and that the ALJ compounded this error by failing to give Dr. Kongara's opinions any weight.[29] The administrative record shows that Dr. Rama Kongara, M.D., treated Plaintiff from January 31, 2006 through July 1, 2015 for her complaints of poor concentration.[30] Dr. Kongara's medical records consist primarily of check-the-box forms on which Dr. Kongara selected from various options to indicate his findings regarding Plaintiff's appearance and behavior, speech, mood and affect, thought process, thought content, perceptions and cognition.[31] The medical records also contain handwritten notes by Dr. Kongara, but the notes are largely illegible. The medical records show that Dr. Kongara found that: (1) Plaintiff's appearance and behavior was usually cooperative, but

---

[26] AR p. 26.
[27] *See generally*, R. Doc. 11.
[28] *See generally*, R. Doc. 21.
[29] R. Doc. 11 at 2-3.
[30] AR pp. 182-210 and 229-238; *See*, AR p. 210.
[31] AR pp. 182-210 and 229-233.

she was sometimes angry;[32] (2) Plaintiff's speech was usually slow, but sometimes it was spontaneous;[33] (3) Plaintiff's mood and affect was anxious, irritable, and/or depressed; (4) Plaintiff's thought process was either tangential, goal directed or circumstantial; (5) Plaintiff's thought content was always marked as "Delusions" and on one occasion was marked as "Preoccupations;"[34] (6) Plaintiff's perceptions were always marked as "Hallucinations;" and (7) Plaintiff's cognition was always marked as showing "intelligence," "orientation," and "insight."[35]

On September 4, 2015, Plaintiff's counsel sent a letter to the ALJ stating that, "Dr. Kongora's [sic] psychiatric treatment records were very difficult to read, as they were mostly illegible. Therefore, we asked Dr. Kongora [sic] to provide a medical source opinion regarding Plaintiff's mental residual functional capacity."[36] On September 4, 2015, Dr. Kongara completed a Questionnaire As To Mental Residual Functional Capacity, which is a check-the-box form on which Dr. Kongara wrote check marks to indicate his responses to certain questions regarding Plaintiff's functional abilities and limitations with respect to social interaction, sustained concentration and persistence, and adaption.[37] According to the Questionnaire, Dr. Kongara found that Plaintiff has "Moderate" and "Marked" limitations in social interaction, sustained concentration and persistence, and that Plaintiff has "Moderate" limitations in adaption.[38] Dr. Kongara also indicated that Plaintiff's condition is likely to deteriorate if placed under stress, particularly that of a job, and that Plaintiff's impairment has lasted or is expected to last 12 months

---

[32] AR pp. 190, 199, 230.
[33] AR pp. 187, 190, 205
[34] AR p. 206.
[35] AR pp. 182-210 and 229-233.
[36] AR p. 246.
[37] AR pp. 241-44.
[38] AR pp. 242-44. The Questionnaire defines "Moderate" as, "Impairment affects but does not preclude ability to function in a work setting," and defines "Marked" as, "Impairment seriously affects ability to function in a work setting." AR p. 242.

or more.[39] Dr. Kongara diagnosed Plaintiff with major depression, anxiety disorder and ADD.[40] As the ALJ pointed out, no clinical justification is given for these responses in the Questionnaire.[41]

Generally, the "opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *see also,* 20 C.F.R. § 404.1527(c)(1) (examining physician opinion given more weight than non-examining physician).[42] However, an ALJ may reject the treating source's opinion when "'there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another.'" *Walker v. Barnhart*, 158 Fed. App'x 534, 535 (5th Cir. 2005) (quoting *Newton*, 209 F.3d at 458). If the ALJ's decision is supported by substantial, contradictory, first-hand evidence from another physician, the ALJ is "not required to go through all six steps in *Newton* [because] . . . the ALJ is responsible for resolving conflicts in the evidence, and we will not substitute our judgment for his." *Cain v. Barnhart*, 193 Fed. App'x 357, 360 (5th Cir. 2006) (citing *Newton*, 209 F.3d at 452, 458; *Walker*, 158 Fed. App'x at 534).

---

[39] AR p. 244.
[40] AR p. 244.
[41] AR p. 24.
[42] For claims filed on or after March 27, 2017, the federal regulations provide:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 404.1520c. Because Plaintiff's claim was filed prior to March 27, 2017, the treating physician rule set forth in 20 C.F.R. § 404.1527 controls.

Further, "the ALJ may give 'less weight, little weight, or even no weight' to the opinion of a treating physician upon a showing of good cause." *Ray v. Barnhart*, 163 Fed. App'x 308, 313 (5th Cir. 2006) (quoting *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001)). In summary, an ALJ is free to discredit the opinion of a treating physician when it is contradicted by the evidence in the record. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (ALJ may reject a treating physician's opinion in favor of an examining physician where the evidence supports a contrary conclusion). Where an ALJ has found a treating physician's opinion to be inconsistent with that physician's own treatment records and other evidence in the record, this court has affirmed the ALJ's rejection of that opinion. *See, Miller v. Colvin*, CIV. A. No. 14-675-BAJ-EWD, 2016 WL 1178391, at * 4 (M.D. La. Feb. 25, 2016) (affirming ALJ's decision to afford little weight to treating psychiatrist's Mental Medical Source Statement where Statement was unsupported by psychiatrist's own treatment notes); *Villar v. Colvin*, CIV. A. No. 14-562-JWD-RLB, 2015 WL 7731400 (M.D. La. Oct. 8, 2015) (affirming ALJ's rejection of treating physician's opinion where physician's own notes and other notes in the record failed to support the physician's opinion).

Although the parties in this case agree that Dr. Kongara is a "treating physician,"[43] the ALJ has shown good cause for giving little weight to Dr. Kongara's September 4, 2015 medical source statement. The ALJ explained that he gave Dr. Kongara's opinions little weight because the medical source statement consisted of a checklist that is unsupported by Dr. Kongara's own treatment notes.[44] The ALJ also found that, "Most of the treatment records (January 2006 through July 2015) are largely illegible and generally consist of mostly check symptoms (cooperative, slow speech, anxious, goal directed) and few exceptions of being irritable, anxious, thought process

---

[43] R. Doc. 11 at 2; R. Doc. 21 at 5-6.
[44] AR p. 24.

tangential or circumstantial, and depressed . . . ."[45] The ALJ also noted that there is no indication from the treatment notes that Dr. Kongara ever performed a detailed mental examination of Plaintiff.[46]

"It is well-established law that the ALJ is entitled to accord little or even no weight to similar 'check-the-box' forms." *Johnson v. Soc. Sec. Admin.*, Civ. A. No. 15-4811, 2016 WL 6902115, at *4 (E.D. La. Sept. 23, 2016), *report and recommendation adopted*, Civ. A. No. 15-4811, 2016 WL 6892878 (E.D. La. Nov. 23, 2016); *See, Rollins v. Astrue*, 464 F. App'x 353, 357 n.5 (5th Cir. 2012) (noting that "check-the-box" forms without additional explanations might be given less weight but reserving that determination for the ALJ); *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (finding good cause to assign little weight to a treating physician's questionnaire opinion "due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examination . . . ."). Accordingly, the ALJ was entitled to accord little weight to Dr. Kongara's September 4, 2015 Questionnaire.

Based upon the foregoing, the ALJ has shown good cause for giving little weight to the opinions of Plaintiff's treating physician, Dr. Kongara. As such, the ALJ's decision to give Dr. Kongara's opinions little weight does not constitute reversible error.

### B. Substantial Evidence Supports the ALJ's RFC Determination

In her Memorandum filed in support of this appeal, Plaintiff also asserts that, "The action, findings, or conclusions of the administrative law judge are not supported by substantial evidence. He flatly rejected the only medical opinion evidence in my case (file) and improperly substituted his own judgment."[47] Plaintiff claims that, "The judge rejected the sole medical opinion in the file

---

[45] AR p. 23 (*citing* AR pp. 187, 189, 191, 199, 229, and 233).
[46] AR p. 23 (*citing* AR pp.182-210).
[47] R. Doc. 11 at 1.

regarding my Functional abilities and based his RFC findings on his own interpretation of the results and treatment records. He should Have considered all the record evidence and cannot pick and choose only the evidence that supports his position."[48] Plaintiff further asserts that, "The treating of a familiar physician who is familiar with my impairments, treatments, and responses should be considered greater weight in determining my disabilities. Based on the foregoing Dr. Kongara's opinions are entitled to controlling weight, and to said opinions merits reversal."[49]

In response, the Commissioner asserts that in assessing Plaintiff's RFC, the ALJ carefully considered the entire record and found that Plaintiff could perform work at all exertional levels with some nonexertional limitations.[50] The Commissioner contends that the ALJ properly weighed the medical opinion evidence, including Dr. Kongara's September 6, 2015 medical source statement,[51] and explained that Dr. Kongara's opinion was given little weight because he did not provide clinical justification for his opinions, some of his findings were contradicted by his own treatment notes, and his conclusory opinion that Plaintiff was disabled is not entitled to controlling weight.[52] The Commissioner claims that the other medical opinion evidence of record provides substantial support for the ALJ's RFC determination, including a psychological consultative examination by Dr. James Van Hook, Ph.D., a Mental Residual Functional Capacity assessment by reviewing psychologist Dr. Robert McFarlain, Ph.D., and an opinion by state agency consultant Dr. Hollis T. Rogers, M.D.[53] The Commissioner maintains that the ALJ considered all of the evidence of record and that the RFC determination should be affirmed because it is supported by substantial evidence.

---

[48] R. Doc. 11 at 1-2.
[49] R. Doc. 11 at 2.
[50] R. Doc. 21 at 4.
[51] As previously discussed, Dr. Kongara's medical source statement, the Questionnaire As To Mental Residual Functional Capacity, is dated September 4, 2015. AR pp. 242-44.
[52] R. Doc. 21 at 5-6.
[53] R. Doc. 21 at 7-8.

### 1. The ALJ's Review of the Evidence of Record

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). The ALJ's RFC determination can be supported by substantial evidence even if the ALJ does not specifically discuss all the evidence that supports his or her decision or all the evidence that he or she rejected. *Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994). A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The court "may only scrutinize the record" and take into account whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision. *Leggett*, 67 F.3d at 564. Accordingly, a "no substantial evidence" finding is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings to support the ALJ's decision. *Johnson*, 864 F.2d at 343-44.

Here, the ALJ's RFC determination is supported by substantial evidence. In determining Plaintiff's RFC, the ALJ first considered the Plaintiff's testimony from the August 7, 2015 administrative hearing, during which Plaintiff testified that she is 52 years old and has a high school education.[54] Plaintiff alleged that she is unable to work because she has anxiety and, as a result, she is unable to multitask, concentrate, remember or retain information, finish what she starts and she lacks energy.[55] Plaintiff testified that she lives with a friend and that on a typical day she showers, dresses and makes a simple breakfast and then she lies around, sleeps and watches television.[56] Plaintiff also testified that she washes dishes, occasionally takes out the trash and

---

[54] AR p. 22; *See*, AR p. 37.
[55] AR p. 22; *See*, AR pp. 37, 42.
[56] AR p. 22; *See*, AR pp. 37-38, 40-41.

grocery shops, but that she cannot do her laundry because she does not have a washer or dryer.[57] Plaintiff also testified that she has a driver's license, but she does not drive because she does not have a car and driving makes her anxious.[58]

With respect to Plaintiff's medical treatment, the ALJ confirmed at the hearing that psychiatrist Dr. Kongara is Plaintiff's treating physician and the ALJ commented that the majority of his treatment records are illegible, which Plaintiff's counsel acknowledged.[59] Plaintiff testified that Dr. Kongara primarily treated her for depression, but also treated her in connection with her divorce and custody battle.[60] According to the ALJ, "Dr. Kongara provides counseling and prescribes medications. The medication helps and has no side effects."[61] Plaintiff further testified that while she is not generally a social person, she has no problems getting along with others.[62]

Turning next to the medical evidence of record, the ALJ reviewed Dr. Kongara's treatment notes and found that, "He treats her with prescribed medications, Prozac, Adderall and Xanax."[63] As previously discussed, the ALJ found that most of Dr. Kongara's treatment records from January 2006 through July 2015, "are largely illegible and generally consist of mostly check symptoms (cooperative, slow speech, anxious, goal directed) and few exceptions of being irritable, anxious, thought process tangential or circumstantial, and depressed . . ., with no detailed mental examinations."[64]

The ALJ also found that Dr. James Van Hook, III, Ph.D., performed a psychological consultative examination of the Plaintiff on September 3, 2014 at the request of Disability

---

[57] AR p. 22; *See*, AR pp. 38-39.
[58] AR p. 22; *See*, AR p. 39.
[59] AR p. 22; *See*, AR pp. 39-40.
[60] AR p. 22; *See*, AR pp. 39-40.
[61] AR p. 22; *See*, AR pp. 46, 48.
[62] AR p. 22; *See*, AR pp. 42-43.
[63] AR p. 23 (*citing* AR p. 240).
[64] AR p. 23 (*citing* AR pp. 186-210 and, specifically, AR pp. 187, 189, 191, 199, 229, and 233).

Determination Services.[65] During that consultation, Plaintiff reported depression, anxiety, ADD, ADHD and seizures. Plaintiff also reported that her last seizure activity was a year before the consultative examination and that her depression and anxiety increased after her divorce. In addition, Plaintiff reported that she bathes and dresses herself. The ALJ found it notable that Plaintiff drove herself to the evaluation, arrived alone and was cooperative throughout the examination.[66]

During Dr. Van Hook's consultative examination, Plaintiff alleged an inability to work due to the foregoing impairments and reported taking Vyvanse, fluoxetine and alprazolam.[67] Plaintiff reported that her appetite was variable and Dr. Van Hook found that she made adequate eye contact and did not appear in acute distress.[68] Dr. Van Hook noted that Plaintiff showed possible symptom magnification, such as reporting severe levels of depression and anxiety, yet showed stable affect.[69] Plaintiff's mood was dysphoric and she stated that she was aggravated and frustrated. Plaintiff also reported that she suffered from continuous suicidal ideation, but was assessed with adequate social judgment. Plaintiff was oriented times four and her thinking was intact, logical and coherent.[70] Dr. Van Hook concluded that Plaintiff is able to understand, remember and carry out instructions, but her attention and concentration for performance of simple repetitive tasks is marginal and she showed memory trouble.[71] Dr. Van Hook also found that Plaintiff is able to respond appropriately to supervision and interact with others and that she has adequate stress

---

[65] AR p. 23 (*citing* AR pp. 221-25).
[66] AR p. 23.
[67] AR p. 223.
[68] AR pp. 223-24
[69] AR p. 224.
[70] AR pp. 223-24.
[71] AR p. 225.

tolerance with medication management.[72] Dr. Van Hook's clinical impression included major depression, generalized anxiety disorder, unspecified attention disorder and cluster B traits.[73]

The ALJ also reviewed two state agency consultative examinations in determining Plaintiff's RFC.[74] On September 12, 2014, the physical consultant, Dr. Hollis T. Rogers, M.D., assessed Plaintiff with no physical impairments or limitations regarding Plaintiff's allegations of seizures, as the allegation of current seizures is not confirmed in the record and Plaintiff reported on a seizure questionnaire that she had not had a seizure in several years.[75] On September 14, 2014, the psychological consultant, Dr. Robert McFarlain, Ph.D., assessed Plaintiff with mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace and no repeated episodes of decompensation.[76]

The ALJ also reviewed Dr. Kongara's September 4, 2015 medical source statement and found that Dr. Kongara assessed Plaintiff with limitations generally consistent with disability.[77] As previously discussed, Dr. Kongara assessed Plaintiff with marked limitations in social interactions, marked deficiencies of sustained concentration and persistence, and moderate limitations in adaption.[78] Dr. Kongara also diagnosed Plaintiff with major depression, anxiety and ADD.[79] The ALJ noted that Dr. Kongara checked the boxes indicating that Plaintiff's condition was likely to deteriorate if placed under stress, particularly that of a job, and that her impairment has lasted or is expected to last 12 months or more.[80]

---

[72] AR p. 225.
[73] AR p. 225.
[74] AR p. 23; *See*, AR pp. 53-62.
[75] AR p. 23 (*citing* AR pp. 53-62 and 139-40).
[76] AR p. 23 (*citing* AR pp. 57 and 226).
[77] AR p. 24 (*citing* AR pp. 242-44).
[78] AR p. 24 (*citing* AR pp. 242-43).
[79] AR p. 24 (*citing* AR p. 244).
[80] *Id.*

Based on the foregoing evidence, the ALJ concluded that Plaintiff's allegations regarding the nature, severity and persistence of her mental symptoms and limitations were not credible.[81] The ALJ acknowledged that Plaintiff has a history of treatment for affective disorder, anxiety and ADD.[82] However, the ALJ found that Dr. Van Hook noted symptom magnification during his consultative examination and that Plaintiff "has described daily activities not limited to the extent one would expect given the complaints of disabling symptoms and limitations."[83] According to the ALJ, Plaintiff testified that she could take care of her personal needs and perform some household chores, such as prepare simple foods, wash dishes and take the trash out. The ALJ also found that Plaintiff had either testified or reported during a consultative exam that she lives with a friend/boyfriend, she has no problem getting along with others, she drives and she goes grocery shopping. The ALJ concluded that, "Despite the impairments, the totality of the medial [sic] record reveals that the claimant would not be precluded from performing within the above residual functional capacity assessment."[84] While the record contains an assessment by Dr. Kongara indicating that Plaintiff is disabled or has limitations greater than those determined by the ALJ, as noted above, the ALJ found that Dr. Kongara did not provide any clinical justification for his opinion.

With respect to the medical opinion evidence, the ALJ found that Dr. Van Hook's opinion that Plaintiff's attention/concentration is only marginal for simple work is unsupported in the body of his consultative examination.[85] The ALJ also accorded little weight to Dr. Kongara's medical source statement because it is unsupported by Dr. Kongara's own treatment notes.[86] The ALJ gave

---

[81] AR p. 24.
[82] AR p. 24 (*citing* AR pp. 182-210, 239-44).
[83] AR p. 24 (*citing* AR pp. 221-25).
[84] AR p. 24.
[85] AR p. 24 (*citing* AR pp. 221-25).
[86] AR p. 24 (*citing* AR pp. 242-44).

great weight, however, to the opinion of Dr. Rogers, the state agency physical consultant, because it is consistent with information conveyed by Plaintiff on her seizure questionnaire and during her consultative examination with Dr. Van Hook.[87] As such, the ALJ concluded that Plaintiff's RFC determination "is supported by the preponderance of evidence."[88]

A review of the record shows that the ALJ's RFC determination that Plaintiff can perform a full range of work at all exertional levels with nonexertional limitations, limiting Plaintiff to understanding, remembering and carrying out simple and routine tasks and to low stress jobs that require only occasional decision making and occasional changes in work setting, is supported by substantial evidence. Specifically, the RFC determination is supported by the medical evidence of record. As the ALJ explained, Dr. Van Hook performed a consultative examination of Plaintiff on September 3, 2014 and found that while Plaintiff "showed possible symptom magnification," her ability to understand, remember and carry out instructions was intact during her examination and her ability to respond appropriately to supervision and interact appropriately with others was adequate.[89] In addition, Dr. McFarlain, the state agency psychological consultant, concluded that Plaintiff had only mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation.[90] Plaintiff's testimony supports this finding, as Plaintiff testified that she can take care of her personal needs, such as bathing and dressing, and can prepare simple foods, wash dishes, take the trash out and go grocery shopping.[91] The medical records also

---

[87] AR p 24 (*citing* AR pp. 139-40, 223-25).
[88] AR p. 24.
[89] AR p. 225.
[90] AR p. 57.
[91] AR pp. 38-39.

show that Plaintiff told Dr. Van Hook that she is able to drive and that she drove herself to the examination and arrived alone.[92]

Although Dr. Van Hook also found that Plaintiff's ability to maintain attention/concentration for the performance of simple repetitive tasks was marginal and that she showed memory trouble, the ALJ found this opinion "is not supported in body of examination."[93] The medical evidence of record supports this conclusion because despite Dr. Van Hook's assessment that Plaintiff's attention/concentration was only marginal for simple work, he found Plaintiff's concentration was "adequate for days of the week backwards and serial digits but weak for counting change."[94] Dr. Van Hook also found Plaintiff's short-term memory was intact and her performance was "normal."[95] Dr. Van Hook's examination report further indicates Plaintiff's intermediate memory was "adequate for encoding but only 66% for recall after several minutes" and that her long-term memory was intact for recent recall and remote recall.[96]

The ALJ also accorded Dr. Kongara's September 4, 2015 medical source statement little weight because it consists of a checklist and is not supported by Dr. Kongara's own treatment notes.[97] As previously discussed, the ALJ's decision to give Dr. Kongara's medical source statement little weight is supported by substantial evidence.

In arguing that the ALJ's RFC determination is not supported by substantial evidence, Plaintiff is essentially asking this Court to reweigh the evidence of record. However, the case law is clear that in applying the substantial evidence standard the court must review the entire record as a whole, but may not reweigh the evidence, try the issues de novo, or substitute its judgment for

---

[92] *See*, AR pp. 223, 225.
[93] AR p. 24 (*citing* AR pp. 221-25).
[94] AR p. 224.
[95] *Id.*
[96] *Id.*
[97] AR p. 24.

19

that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence are for the ALJ to decide and in the instant case, the ALJ resolved such conflicts in favor of the evidence that shows Plaintiff has the RFC to perform a full range of work at all exertional levels with certain nonexertional limitations. As such, the ALJ's RFC determination is supported by substantial evidence.

## VI. Conclusion

The analysis above demonstrates that Plaintiff's claims of reversible error are without merit. The record considered as a whole supports the finding that the ALJ applied the proper legal standards and substantial evidence supports the determination that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that under sentence four of 42 U.S.C. § 405(g), the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin, denying the application for supplemental security income filed by plaintiff, Kimberly Dawn Tims, is **AFFIRMED** and this action is **DISMISSED WITH PREJUDICE.**

Signed in Baton Rouge, Louisiana, on September 11, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**